**FILE**

IN CLERKS OFFICE

SUPREME COURT, STATE OF WASHINGTON

DATE    MAR 2 1 2013

*Madsen C.J.*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on March 21, 2013

*[signature]* for Ronald R. Carpenter Deputy

Ronald R. Carpenter
Supreme Court Clerk



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 85788-1 |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORIO BRAVO ORTEGA | ) | |
| AKA MARTIN DOMINGUEZ, | ) | |
| | ) | En Banc |
| Petitioner, | ) | |
| | ) | |
| ALFONSO LUPE CUEVAS | ) | |
| AKA MARGARITO CASTENADA | ) | |
| DELAROSA, | ) | |
| | ) | |
| Defendant. | ) | Filed    MAR 2 1 2013 |
| | ) | |

GONZÁLEZ, J.—This case asks us to decide whether an officer has lawful authority to arrest a gross misdemeanor suspect based only on the observations of another officer and whether an officer who directs an arrest from a remote location is an "arresting officer." Unless a statutory exception applies, an officer may arrest a misdemeanor suspect without a warrant only if the officer was present when the misdemeanor was committed. Here, a police officer positioned on the second floor of a building observed Gregorio Ortega commit acts that gave the officer probable cause

to believe he was engaged in drug-traffic loitering, a gross misdemeanor. The observing officer maintained radio contact with fellow officers, described Ortega's activities to them, and instructed them to arrest Ortega. One of the other officers arrested Ortega and searched him incident to that arrest, finding crack cocaine and cash.

The trial court denied Ortega's motion to suppress the evidence, and he was convicted of possession of cocaine with intent to deliver. The Court of Appeals affirmed the conviction. We reverse the Court of Appeals. The officer who arrested Ortega was not present when the gross misdemeanor occurred, and the record does not support a finding that the officer who observed the offense was an "arresting officer." Ortega's arrest was unlawful. But for the unlawful arrest, there would have been no search, and the evidence found incident to that arrest should have been suppressed.

## I. FACTS

In response to reports of suspected drug activity, officers from the Seattle Police Department investigated the Belltown neighborhood of Seattle. Officer Chad McLaughlin was positioned on the second floor of a building, observing the street below. Officers David Hockett and Anthony Gaedke were in patrol cars nearby and awaited instructions from Officer McLaughlin.

From his position on the second floor, Officer McLaughlin saw Ortega and another man attempt to make contact with passersby. Officer McLaughlin saw Ortega appear to make three drug transactions, but he did not see what, if anything, was

exchanged during the suspected transactions. The officer believed he had probable cause to arrest Ortega for drug-traffic loitering. "A person is guilty of drug-traffic loitering if he or she remains in a public place and intentionally solicits, induces, entices, or procures another to engage in unlawful conduct contrary to Chapter 69.50, Chapter 69.41, or Chapter 69.52, Revised Code of Washington." SEATTLE MUNICIPAL CODE 12A.20.050(B). Drug traffic loitering is a gross misdemeanor.[1] *Id.* at subsec. (E).

Officer McLaughlin maintained radio contact with Officers Hockett and Gaedke, informing them of the facts establishing probable cause to arrest the suspects for drug-traffic loitering. Out of Officer McLaughlin's view, Officer Hockett made contact with Ortega, placed him in handcuffs, and arrested him. Officer Hockett then searched Ortega incident to arrest and found crack cocaine and $780 in his pockets. At some point after the arrest and search, Officer McLaughlin confirmed that Officer Hockett had arrested the correct suspect.[2]

The State charged Ortega with felony possession of cocaine with intent to deliver. The trial court denied Ortega's CrR 3.6 pretrial motion to suppress the evidence found during the search incident to arrest. A jury found Ortega guilty of possession of cocaine with intent to deliver. Ortega appealed, and the Court of

---

[1] The State argued below that Officer McLaughlin had probable cause to arrest Ortega for a felony, but it does not renew that argument before this court.

[2] Officers McLaughlin and Gaedke testified that Officer McLaughlin confirmed that the other officers had arrested the correct suspects at the scene of arrest. Officer Hockett could not recall whether that confirmation occurred at the scene or later at the police precinct. The State agrees, however, that the confirmation did not occur until after the arrest had taken place.

Appeals affirmed his conviction. *State v. Ortega*, 159 Wn. App. 889, 248 P.3d 1062 (2011). We granted review. *State v. Ortega*, 171 Wn.2d 1031, 257 P.3d 665 (2011).

## II. STANDARD OF REVIEW

We review de novo conclusions of law from an order pertaining to the suppression of evidence. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

## III. ANALYSIS

Ortega asserts that his arrest and the related search violated his rights under article I, section 7 of the Washington State Constitution. Our state constitution provides greater protection to individuals from warrantless searches and seizures than does the United States Constitution. *State v. Walker*, 157 Wn.2d 307, 313, 138 P.3d 113 (2006). Article I, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." A warrantless search is per se unreasonable and its fruits will be suppressed unless it falls within one of the carefully drawn and jealously guarded exceptions to the warrant requirement. *State v. Afana*, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010); *State v. Patton*, 167 Wn.2d 379, 386, 219 P.3d 651 (2009). The State bears a heavy burden in showing that a warrantless search falls within one of the exceptions. *State v. Jones*, 146 Wn.2d 328, 335, 45 P.3d 1062 (2002).

The relevant exception here is for a search incident to arrest. A lawful custodial arrest is a condition precedent to a search incident to arrest. *State v. O'Neill*,

148 Wn.2d 564, 585, 62 P.3d 489 (2003). Thus, the issue of whether Officer Hockett had lawful authority to search Ortega turns on whether Ortega was lawfully arrested.

*1. The Presence Requirement*

Ortega asserts that he was unlawfully arrested in violation of the presence requirement. Under the common law, an officer was permitted to arrest a suspect for a misdemeanor without a warrant only if the offense was committed in the officer's presence. *State ex rel. McDonald v. Whatcom County Dist. Court,* 92 Wn.2d 35, 37, 593 P.2d 546 (1979). The presence requirement "is satisfied whenever the officer directly perceives facts permitting a reasonable inference that a misdemeanor is being committed." Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update,* 28 SEATTLE U. L. REV. 467, 592 (2005) (citing *City of Snohomish v. Swoboda,* 1 Wn. App. 292, 295, 461 P.2d 546 (1969)). RCW 10.31.100 codifies and amends this common law rule, providing that an officer may arrest a suspect for specific, enumerated misdemeanors and gross misdemeanors committed outside of the officer's presence. *See Walker,* 157 Wn.2d at 310. The exceptions include misdemeanors or gross misdemeanors involving physical harm or threats of harm to any person or property, possession or use of cannabis, criminal trespass, violation of protection orders, domestic violence, and indecent exposure. RCW 10.31.100(1)-(10).

The presence requirement under RCW 10.31.100 is unambiguous. "When statutory language is unambiguous, we look only to that language to determine the

legislative intent without considering outside sources." *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). The statute states, "*A* police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of *the* officer . . . ." RCW 10.31.100 (emphasis added). Under the plain language of the statute, only an officer who is present during the offense may arrest a suspect for a misdemeanor or a gross misdemeanor. Officer Hockett was not present when Ortega committed the acts that established probable cause to arrest him for drug-traffic loitering, and RCW 10.31.100 does not except drug-traffic loitering from the presence requirement. Thus, Officer Hockett lacked lawful authority to arrest Ortega.

Moreover, the statute includes a specific instance when an officer may rely on the direction of another officer in making an arrest, which does not apply to drug-traffic loitering. Under the exception, if a traffic infraction is committed in the presence of an officer, that officer may ask another officer to arrest the driver. RCW 10.31.100(6) ("The request by the witnessing officer shall give an officer the authority to take appropriate action under the laws of the state of Washington."). Neither the general presence requirement nor the other exceptions to that rule expressly allow an officer to rely on the request of a witnessing officer in arresting a misdemeanor or gross misdemeanor suspect. The doctrine of expressio unius est exclusio alterius ("to express or include one thing implies the exclusion of the other," *Black's Law Dictionary* 661 (9th ed. 2009)) supports our finding that the express authority to rely

on the request of another officer in making an arrest for a traffic infraction indicates that such authority does not extend to other nonfelony offenses. *See Staats v. Brown*, 139 Wn.2d 757, 768 n.3, 991 P.2d 615 (2000) (finding that the exceptions to the presence requirement under RCW 10.31.100 are exclusive).

The State argues that the common law presence rule does not prohibit teams of officers from making arrests based on shared information. Therefore, the State contends that the legislature's codification of the common law rule under RCW 10.31.100 does not prohibit such arrests either. Assuming, arguendo, that the common law presence requirement did not prohibit an officer from arresting a misdemeanor suspect based solely on the request of another officer who witnessed the offense, the statutory presence requirement abrogated that authority. A statute abrogates the common law when "'the provisions of a . . . statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force.'" *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 77, 196 P.3d 691 (2008) (alteration in original) (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1 of Douglas County*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973)). An officer cannot be authorized to "arrest a person without a warrant for committing a misdemeanor or gross misdemeanor *only* when the offense is committed in the presence of the officer," RCW 10.31.100 (emphasis added), and yet also be allowed to arrest a suspect at the request of another officer. Moreover, the exception under RCW 10.31.100(6), which expressly allows an officer to rely on another officer's request to arrest a driver for a

traffic infraction, would be unnecessary if an officer were permitted to arrest a suspect of any nonfelony offense at the request of an officer who witnessed the misconduct.

Furthermore, although the state of the law prior to the adoption of a statute must be considered when construing the legislative intent, "where, as here, a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law." *Pub. Util. Dist. No. 1*, 83 Wn.2d at 222. Thus, even if Ortega's arrest would have been valid under the common law presence requirement, the unambiguous language of the statute removed that possibility.

If the time has come to allow a misdemeanor arrest by an officer who did not personally witness any misconduct, that development must start with the legislature. The legislature has already shown its willingness to adapt the presence requirement to meet modern circumstances by adding exceptions to the presence requirement to "address social problems either not recognized or not present during common law . . . ." *Walker*, 157 Wn.2d at 316-17. For example, after we found in *State v. Hornaday*, 105 Wn.2d 120, 713 P.2d 71 (1986), that an officer could not validly arrest an intoxicated minor for possessing or consuming alcohol when the misdemeanor conduct did not occur in the officer's presence, the legislature responded by amending RCW 10.31.100(1) to explicitly include the minor in possession statute. *Walker*, 157 Wn.2d at 315 (citing LAWS OF 1987, ch. 154, § 1). We are now confronted by the similar question of whether the reliability of modern police law enforcement methods

justifies expanding the presence requirement beyond the terms of RCW 10.31.100. We find that this question is appropriate for the legislature. *See McDonald*, 92 Wn.2d at 38; *see also Hornaday*, 105 Wn.2d at 130.

### 2. *The Fellow Officer Rule*

The State also argues that under the fellow officer rule, Officer Hockett had lawful authority to arrest Ortega based on Officer McLaughlin's observations. The fellow officer rule, also known as the police team rule, allows a court to consider the cumulative knowledge of police officers in determining whether there was probable cause to arrest a suspect. 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.5(b), at 337-39 (5th ed. 2012); *see Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971). The Court of Appeals has adopted the fellow officer rule in the felony context. *State v. Mance*, 82 Wn. App. 539, 542, 918 P.2d 527 (1996); *State v. White*, 76 Wn. App. 801, 805, 888 P.2d 169 (1995), *aff'd*, 129 Wn.2d 105, 915 P.2d 1099 (1996); *State v. Maesse*, 29 Wn. App. 642, 647, 629 P.2d 1349 (1981). This court has discussed the fellow officer rule but never expressly adopted it. *State v. Gaddy*, 152 Wn.2d 64, 70-71, 93 P.3d 872 (2004) (declining to apply the fellow officer rule to permit an arrest based on information disseminated by a nonpolice agency).

The State argues that the fellow officer rule applies to warrantless misdemeanor and gross misdemeanor arrests. *See* J. Terry Roach, Comment, *The Presence Requirement and the "Police-Team" Rule in Arrest for Misdemeanors*, 26 WASH. &

LEE L. REV. 119 (1969). As discussed above, however, such an interpretation conflicts with the plain language of RCW 10.31.100. RCW 10.31.100 gives lawful authority to make a warrantless arrest of a misdemeanor suspect only if the arresting officer was present during the offense.

We recognize that published Washington appellate opinions have expressed differing views regarding the application of the fellow officer rule to misdemeanors. In *Torrey v. City of Tukwila*, 76 Wn. App. 32, 882 P.2d 799 (1994), although the Court of Appeals ultimately found that a violation of the presence requirement under state law could not support the appellants' federal civil claims, it also noted that the fellow officer rule would apply to misdemeanor arrests. *Id.* at 39. Additionally, in his concurring and dissenting opinion to *Staats v. Brown*, 139 Wn.2d at 791, Justice Talmadge noted that the fish and wildlife officer was entitled to rely on information provided by a wildlife agent to support his probable cause determination that the defendant had committed a misdemeanor. Based on the plain language of RCW 10.31.100, we hold that the fellow officer rule does not apply to misdemeanors. To the extent *Torrey* is inconsistent, it is disapproved.

### 3. The Definition of an "Arresting Officer"

The Court of Appeals held that only an officer who observed a misdemeanor may arrest a suspect without a warrant, but in this case it found that the observing officer's "continuous contact rendered him a participant in the arrest." *Ortega*, 159 Wn. App. at 898. The court essentially found that Officer McLaughlin, the officer

10

watching from the second floor of a building, was an "arresting officer" under RCW 10.31.100 because he "viewed the conduct, directed the arrest, kept the suspects and officers in view, and proceeded immediately to the location of the arrest to confirm that the arresting officers had stopped the correct suspects." *Id.* We disagree.

Although we have not had occasion to define the term "arresting officer," it is useful to consider the actions that constitute an "arrest." "'An arrest takes place when a duly authorized officer of the law manifests an intent to take a person into custody and actually seizes or detains such person.'" *Patton*, 167 Wn.2d at 387 (quoting 12 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure § 3104, at 741 (3d ed. 2004)). The inquiry is whether a reasonable person under the circumstances would consider himself or herself under arrest. *State v. Reichenbach*, 153 Wn.2d 126, 135, 101 P.3d 80 (2004). Examples of conduct that would cause a reasonable person to believe he or she was under arrest include handcuffing the suspect, placing the suspect in a patrol vehicle for transport, and telling the suspect that he or she is under arrest. *State v. Radka*, 120 Wn. App. 43, 49-50, 83 P.3d 1038 (2004).

We also consider how other states have defined the term "arresting officer." In *State v. Stauffer*, 266 N.C. 358, 145 S.E.2d 917, 917 (1966), an officer observed the defendant driving erratically and requested assistance. The officer approached the stopped vehicle as a second officer arrived, and the second officer alone spoke with the defendant prior to the arrest. *Id.* The second officer concluded that the defendant

11

was intoxicated, told the defendant that he was under arrest, and escorted him to the police station. *Id.* At the police station, the officer who first observed the defendant's behavior administered a breathalyzer test. *Id.* Applying a statute that prohibited an arresting officer from administering the test of a suspect's blood alcohol level, the court held that "[a]n officer, who is present at the scene of the arrest for the purpose of assisting in it, if necessary, is an 'arresting officer' within the meaning of this statute even though a different officer actually places his hand upon the defendant and informs him that he is under arrest." *Id.* at 918. The court found that the first officer was an "arresting officer" and that the trial court erred by allowing him to testify as to the defendant's breath test results. *Id.*

Similarly, in *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298, 304 (2001), the court considered whether an officer who did not actually arrest a suspect was nevertheless an "arresting officer" with authority to conduct a search incident to arrest. The officer entered the apartment at the same time as other officers, informed the officer who completed the arrest that there was an outstanding warrant for the arrestee, and was present in the room when the arrest took place. *Id.* The court found that the officer at issue was an arresting officer at the scene. *Id.*

On the other hand, in *Arndt v. Department of Motor Vehicles*, 270 Neb. 172, 699 N.W.2d 39 (2005), the court found that an officer who arrived at the scene after an arrest had taken place was not an arresting officer. An officer stopped the vehicle driven by the defendant and conducted field sobriety tests and a preliminary breath

test. *Id.* at 41. Concluding that the defendant was intoxicated, the officer placed him under arrest. *Id.* Another officer was called to transport the defendant to jail, and the first officer informed the second officer of the details of the traffic stop. *Id.* The second officer transported the defendant to jail and completed a report that was statutorily required to be completed by the arresting officer. *Id.* Referring to the same standard adopted in *Stauffer*, the court found that the second officer was not an "arresting officer." *Id.* at 43. The second officer was not present when the defendant was taken into custody, and it was the first officer who stopped the defendant, observed that he was intoxicated, conducted field sobriety tests, and placed him under arrest. *Id.* The second officer's "limited participation [did] not establish that he was 'present at the scene of the arrest for purposes of assisting in it.'" *Id.* (quoting *Connelly v. Dep't of Motor Vehicles*, 9 Neb. App. 708, 713-14, 618 N.W.2d 715 (2000)).

We decline to adopt a rigid definition of "arresting officer" at this time, but the facts in this case do not support finding that Officer McLaughlin was an arresting officer. Officer McLaughlin described the suspects and informed the other officers that he had probable cause to arrest, but it is Officer Hockett's conduct that would have caused a reasonable person to believe he or she was under arrest, as that term is defined in our case law. *See Patton*, 167 Wn.2d at 387. Officer Hockett approached Ortega, handcuffed him, and placed him under arrest. Although Officer McLaughlin's conduct was vital to apprehending Ortega, it is undisputed that he did

not arrive at the scene of the arrest or have any contact with Ortega until after the arrest and search had taken place.

Contrary to the State's argument, we do not find that upholding the presence rule in this case will result in absurd consequences. *See State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002) ("We will 'avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences.'" (internal quotation marks omitted) (quoting *State ex rel. Royal v. Yakima County Comm'rs*, 123 Wn.2d 451, 462, 869 P.2d 56 (1994))). Simply because an officer is not present during the commission of a misdemeanor, and therefore may not arrest the suspect, does not mean that the officer is powerless to enforce the law. An officer who did not witness a misdemeanor may still stop and detain a person reasonably suspected of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *see also Duncan*, 146 Wn.2d at 172. In this case, assuming Officer Hockett reasonably suspected that Ortega had committed a criminal act, he could have detained Ortega until Officer McLaughlin arrived to make the arrest. Alternatively, if Officer Hockett lacked even reasonable suspicion of illegal activity, he could have made contact with Ortega and attempted to establish probable cause. *See, e.g., State v. Belanger*, 36 Wn. App. 818, 821, 677 P.2d 781 (1984) (finding that the officer at first lacked a well-founded suspicion of criminal activity to justify detaining the defendant, but "he did have the limited right and duty to approach and inquire about what appeared to be suspicious circumstances").

Moreover, to the extent that a strict interpretation of the presence requirement hinders modern law enforcement practices, it is important to note that Officer McLaughlin only established probable cause to believe Ortega committed a misdemeanor. "The right to protect against unwarranted police interference is more pronounced in the case of misdemeanors because such crimes generally pose less threat to society than do felonies." *Hornaday*, 105 Wn.2d at 130. If Ortega's conduct had established probable cause to believe he had committed a felony, Officer Hockett would have had lawful authority to arrest Ortega based on Officer McLaughlin's observations. RCW 10.31.100 ("A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant.").

## IV. CONCLUSION

The officer who arrested Ortega for the gross misdemeanor of drug-traffic loitering was not "present" during the commission of the offense, and the officer who observed Ortega's conduct was not an "arresting officer" for purposes of the presence requirement under RCW 10.31.100. The arrest was unlawful. Therefore, the search incident to that arrest violated article I, section 7 of the Washington State Constitution. We suppress the evidence found in the search incident to that arrest, reverse the conviction, and remand for further proceedings.

No. 85788-1

González, J.

WE CONCUR:

Fairhurst, J.

Chambers, J.P.T.

Stephens, J.

*State v. Ortega (Gregorio)*

No. 85788-1

MADSEN, C.J. (concurring)—Reluctantly, I concur in the majority opinion. My reluctance does not stem from the majority's analysis of RCW 10.31.100 and what it requires for a warrantless arrest for a misdemeanor, but rather from the fact that the statute precludes an arrest under the circumstances here. This result does not accord with the policy underscoring the general rule that a warrantless arrest can be made for a misdemeanor but only if it occurs in the presence of the officer. It also bars the use of an effective law enforcement tool, useful in urban areas, where offenses like the one here are common but rarely occur within the presence of the arresting officer.

Discussion

RCW 10.31.100 does not permit the warrantless search that occurred here, as the majority holds. The statute states the general rule that "[*a*] *police officer* may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of *the* officer." RCW 10.31.100 (emphasis added). While the offense was committed in the presence of the officer who viewed it from a second floor window in a nearby building and who almost immediately appeared on the scene, another officer acted at the direction of the first to carry out the

formality of the arrest. Thus, the officer who made the arrest was not "the" officer in whose presence the offense was committed.

Unfortunately, the statutory codification of the common law rule does not carry out the purpose of the rule. As we have noted, RCW 10.31.100 does not alter the basic common law rule, but rather enumerates exceptions to the general common law. *State v. Walker*, 157 Wn.2d 307, 317, 138 P.3d 113 (2006). The historical basis of the common law "in the presence" requirement is the balancing of the public need for certain and immediate arrests of criminal suspects and public safety concerns against the requirement of the magistrate's oversight needed to protect against mistaken arrests with their impact on privacy interests. *Walker*, 157 Wn.2d at 316 (citing *United States v. Watson*, 423 U.S. 411, 442, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) (Marshall, J., dissenting); *Carroll v. United States*, 267 U.S. 132, 157, 45 S. Ct. 280, 69 L. Ed. 543 (1925)).

The potential for mistakes is appreciably higher when an officer relies on nonpolice sources and accordingly the need for the neutral magistrate is greater. Commenting on the "presence" requirement, an expert commentator has stated that "[a]lthough the proposition is not carefully developed in the cases generally, it may be said that courts are reluctant to permit reliance upon non-police sources, apparently on the ground that such sources should ordinarily be 'tested out' by submitting the information to a magistrate." 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 5.1(c), at 40 (5th ed. 2012).

2

When the offense is committed in the presence of an officer, the concerns that underscore the common law rule are not implicated. There is no reliance on nonpolice sources involved and the subsequent arrest by a second officer does not involve the risks of mistaken arrest that arise when nonpolice sources are relied upon.[1] Rather, a single officer using his own senses makes all of the observations and gathers all the information comprising probable cause for an arrest. *See* LAFAVE, *supra*, § 5.1(c), at 34-35 ("[p]resence is most commonly thought of as the state of being in view, and thus it seems beyond question that a misdemeanor seen by the officer has occurred in his presence [and] [t]his is true even when the offense has been seen only with the aid of a telescope or binoculars"). Indeed, there is no question but that if the officer had run down the stairs, out of the building, and carried out the arrest without the aid of any other officer, the arrest would be a lawful arrest of a suspect committing a misdemeanor offense in the presence of the officer.

But under the circumstances here, the physical, and in this case basically mechanical, act of placing the suspect under arrest vitiates what otherwise would be a permissible warrantless arrest for a misdemeanor committed in the presence of the officer. In light of the way that RCW 10.31.100 is worded, this is the correct result, but it requires us to disregard the facts that the radio contact between the officer who observed the defendant's conduct served to convey to the second officer that the first officer had established probable cause for the arrest, the second officer added no information and

---

[1] Nor do the circumstances implicate the fellow officer rule, on which the State relies here, because that rule applies when the combined knowledge of two officers together forms the necessary probable cause to arrest.

3

simply carried out the first officer's instruction to arrest, and the first officer was immediately on the scene to confirm that the suspect was the individual he had seen, thus eliminating any possibility whatsoever of a mistake.

The kind of team surveillance and undercover work carried out in this case is undoubtedly an otherwise effective tool for law enforcement to counter sometimes near-epidemic drug transactions, particularly in urban areas. It is also a more cost-effective enforcement mechanism than is required either by placing more individual officers in places where potential drug transactions can be witnessed or by seeking an arrest warrant in the case of gross misdemeanor drug offenses.

The legislature can provide a means for law enforcement agencies to utilize such team strategies for arresting misdemeanants who traffic in illegal drugs. The legislature could amend the statute to provide that a law enforcement officer can arrest a person without a warrant in response to a request from another officer in whose presence the misdemeanor drug offense was committed. It has already enacted similar legislation when it expanded the common law to authorize an arrest on request of another officer in whose presence a traffic infraction has been committed. RCW 10.31.100(6).

Thus, if the legislature believes that a valuable tool is unavailable to law enforcement because of the plain language of RCW 10.31.100, it can readily remedy the problem by amending the statute. No harm to the policies underlying warrantless misdemeanor arrests would result because such arrests do not depend upon information obtained from nonpolice sources. Such an amendment would also bring Washington into

line with state laws that already permit this team enforcement approach with regard to misdemeanors. *See, e.g., Brown v. State*, 442 N.E.2d 1109, 1115 (Ind. 1982); *Robinson v. State*, 4 Md. App. 515, 243 A.2d 879 (1968); *State v. Chambers*, 207 Neb. 611, 299 N.W.2d 780 (1980); *State v. Standish*, 116 N.H. 483, 363 A.2d 404 (1976); *State v. Lyon*, 103 N.M. 305, 706 P.2d 516, 519–20 (Ct. App. 1985); *State v. Ash*, 12 S.W.3d 800 (Tenn. Crim. App. 1999).

I concur in the majority opinion. I write separately to convey my concerns that the result here is unlikely to be what the legislature intends and to encourage the legislature to consider an amendment to the statute if this is the case.

Madsen, C.J.

Wiggins, J.