# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67334-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| ANTOINE LAMONT BROCK, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 4, 2014 |
| | ) | |

APPELWICK, J. — Under the "time of arrest" rule, an officer may search personal

articles in an arrestee's actual and exclusive possession at or immediately preceding

the time of arrest. During a Terry[1] stop, an officer separated Brock from his backpack.

The officer subsequently arrested Brock and searched his backpack, but not until nearly

10 minutes after separating Brock from the bag. The trial court denied Brock's motion

to suppress, finding that this was a valid search incident to arrest under article I, section

7 of the Washington Constitution. We reverse and remand.

## FACTS

On May 21, 2008, Officer Eric Olson was patrolling Golden Gardens Park at 3:00

a.m. The park had closed at 11:30 p.m. As Officer Olson approached the bathhouse,

he noticed that the door to the men's restroom was open and the light was on. Inside

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the men's room, Officer Olson could see a pair of legs. The legs belonged to the appellant in this case, Antoine Brock. Officer Olson waited for roughly 10 minutes for Brock to come out of the restroom.

When Brock emerged, he was wearing baggy clothing and carrying a full backpack. Officer Olson identified himself as a police officer and informed Brock that the park was closed and Brock was not allowed to be there. Officer Olson had probable cause at this time to arrest Brock for trespass, but chose not to.

Instead, Officer Olson decided to perform a Terry stop and frisk. Officer Olson told Brock that he was not under arrest. Officer Olson asked Brock to put down his backpack, and Brock complied. Officer Olson did not find any weapons or any other items during his pat down of Brock. He did not pat down or search the backpack at that time.

After the pat down, Officer Olson asked Brock for identification as part of his trespass investigation. Brock replied that he did not have identification on him. Instead, he told Officer Olson that his name was Dorien Halley and provided a corresponding birth date and social security number.

Officer Olson told Brock to come back to his patrol truck to continue the investigation. With safety concerns in mind, Officer Olson carried Brock's backpack. Officer Olson had Brock stand on the curb 12 to 15 feet from the truck while Officer Olson placed the backpack in the front passenger seat. Officer Olson reminded Brock that he was still not under arrest at the time, but told Brock that he was not free to go.

Officer Olson checked the identification that Brock provided through the Washington State Patrol database. Brock told Officer Olson that he would not find a

2

record of Brock, because Brock's license was from California. Officer Olson entered the information that Brock had given him, but found no record in either Washington or California.

At that point, Officer Olson felt that he had probable cause to arrest Brock for providing false information. He told Brock that he was under arrest and read him his Miranda[2] rights. Because Brock had been cooperative and did not have weapons on his person, Officer Olson did not handcuff him. Officer Olson also told Brock that he was not necessarily going to jail.

Officer Olson had not felt a wallet during the pat down, so he decided to look for Brock's identification in the backpack. He left Brock standing on the curb 12 to 15 feet away. The backpack was still in the truck when Officer Olson searched it. Officer Olson kept Brock in view while searching the bag. Officer Olson considered his search of the backpack a search incident to arrest. He did not articulate an officer safety or evidence preservation rationale for his search.

In searching the backpack, Officer Olson immediately saw a wallet-like object and thought it would be a likely place to find identification. In the wallet, he found two small baggies that appeared to contain methamphetamine and marijuana. He also found a Department of Corrections (DOC) inmate identification card. The card displayed Brock's picture and identified him as Antoine L. Brock.

Officer Olson then handcuffed Brock, thoroughly searched his person, and put him in the back of his patrol truck. Officer Olson estimated that the time from initial contact to handcuffing Brock was 10-12 minutes.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Officer Olson then ran Brock's real name through the database and discovered that he had a DOC felony arrest warrant. Once the Washington State Patrol confirmed the warrant, Officer Olson decided to take Brock to jail.

Before doing so, Officer Olson pulled the rest of Brock's belongings out of his backpack. Brock still did not have access to the bag at this point. Officer Olson found a number of items, including checks, credit cards, mail, and more baggies he suspected might contain narcotics. Officer Olson testified that he did not perform a thorough inventory at that time or catalogue the objects in the backpack. However, Officer Olson also testified that he would be unable to bring an arrestee's personal effects to the jail without searching them for contraband, weapons, or explosives.

Brock was ultimately booked for his DOC warrant and possession of methamphetamine. In addition, Officer Olson recognized that the checkbooks, credit cards, and bank statements that he found in Brock's backpack—which had other people's names affixed to them—were possible stolen property. Officer Olson entered these items into evidence. The State ultimately charged Brock with 10 counts of identity theft in the second degree, three counts of forgery, and violation of the Uniform Controlled Substances Act, chapter 69.50 RCW.

Brock moved to suppress the evidence found in his backpack. The court denied Brock's motion, finding that this was a valid search incident to arrest.

Brock waived his right to a jury trial and proceeded by way of stipulated trial. The court found him guilty on all counts except one identity theft count. He appeals his conviction.

DISCUSSION

Brock argues that the search of his backpack was unlawful under article I, section 7 of the Washington Constitution. He contends that there was no officer safety or evidence preservation basis for the search, so the trial court erred in denying his motion to suppress. This court reviews de novo conclusions of law from an order pertaining to the suppression of evidence. State v. Valdez, 167 Wn.2d 761, 767, 224 P.3d 751 (2009).

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Under this provision, a warrantless search is per se unreasonable unless it falls within one of the "carefully drawn and jealously guarded" exceptions to the warrant requirement. State v. Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013).

One such exception is the search incident to arrest. Id. at 123. An officer may, incident to a lawful custodial arrest, make a warrantless search of (1) an arrestee's person and (2) the area within an arrestee's immediate control. Valdez, 167 Wn.2d at 769. Only the former is at issue here. A search of an arrestee's person encompasses both the arrestee and personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest. State v. Byrd, 178 Wn.2d 611, 623, 310 P.3d 793 (2013). Constructive possession is insufficient: the search must extend to only those articles immediately associated with the arrestee. Id. Under the time of arrest rule, an article is "immediately associated" with an arrestee's person if the arrestee has actual possession at or immediately preceding the time of arrest. Id. at

5

621, 623. Searches of an arrestee's person require no additional justification beyond the validity of the arrest. Id. at 617-18.

In Byrd, the Washington Supreme Court upheld the search of a purse that was on the defendant's lap when she was arrested. Id. at 615, 624. The officer seized the purse and set it on the ground before securing the defendant in his patrol car. Id. at 615. He returned to the purse "within 'moments'" to search it for weapons or contraband, whereupon he found methamphetamine. Id. The court found that the defendant's purse was immediately associated with her person at the time of arrest, leaving her possession only after the arrest. Id. at 623-24. It was thus a constitutional search incident to arrest of the arrestee's person.[3] Id. at 624.

The court recently reiterated this rule in State v. MacDicken, No. 88267-3, 2014 WL 766693 (Wash. Feb. 27, 2014). There, the defendant was carrying a laptop bag and pushing a rolling duffel bag when he was arrested. Id. at *1. An officer ordered the defendant to the ground, handcuffed him, and stood him up next to the patrol car. Id. Another officer then moved the bags a car's length away and searched them. Id. The court concluded that the bags were in the defendant's actual and exclusive possession at the time of arrest and were immediately associated with his person. Id. at *3. It held that the search of the bags was a part of a lawful search incident to arrest of the defendant's person. Id.

---

[3] The Byrd court expressed concern about the validity of the underlying arrest, which would then invalidate the resulting search. See 178 Wn.2d at 625 n.3. However, the court stated that, if the underlying arrest was valid, the procedures followed were valid as well. Id. at 625.

6

Here, the salient facts are: Officer Olson searched the bag roughly 10 minutes after seizing it from Brock. The bag was secured in Officer Olson's truck from the time of seizure through the time of the search. Brock was 12 to 15 feet away from the vehicle and the backpack at the time of arrest and during the search of the backpack. Brock had actual possession of the backpack when Officer Olson initiated the Terry stop and when he seized it. However, Brock did not have actual possession of the backpack at the time of his arrest.

Under Washington case law, most of these facts will not alone render the search unreasonable. See, e.g., MacDicken, 2014 WL 766693 at *1; State v. Smith, 119 Wn.2d 675, 682, 835 P.2d 1025 (1992), abrogated on other grounds by Byrd, 178 Wn.2d 623. In Smith, the court upheld a search of a fanny pack that fell from the defendant's person during his arrest. 119 Wn.2d at 676-77. There, the officer arrested the defendant, placed him in the backseat of the patrol car, and set the fanny pack on the front seat. Id. at 677. The officer searched the fanny pack between 9 and 17 minutes later. Id. The lapse in time of several minutes after separating defendant and bag did not render the search unreasonable. See id. at 677-78. The fact that the officer had secured the bag in his patrol car for a time prior to the search did not render the search unreasonable. See id. In MacDicken, the bag in the suspect's possession at the time of arrest was moved a car's length away from the defendant before it was searched. 2014 WL 766693 at *1. This did not render the search unreasonable. Brock was separated from his bag for a similar amount of time as Smith and was closer to his bag than MacDicken was to his when the search occurred. We conclude that neither the length of time the officer had control of the backpack, the physical distance between

Brock and the backpack, nor the fact that the backpack was secured in the patrol vehicle require us to invalidate the search of the backpack.

However, unlike MacDicken and Byrd, Brock did not have actual possession of his bag at the time of arrest. We therefore ask: was the backpack in Brock's possession immediately preceding his arrest so that this was a valid search of an arrestee's person under the time of arrest rule?

Washington courts have not precisely defined the scope of "immediately preceding" the time of arrest. But, in cases where a defendant has unsuccessfully challenged possession as related to arrest, the lapse of time between possession and arrest has been less significant than here. See, e.g., Smith, 119 Wn.2d at 682; State v. Ellison, 172 Wn. App. 710, 718, 291 P.3d 921 (2013).

In Smith, the defendant's fanny pack fell off during the struggle that ensued after the officer tackled him to the ground. 119 Wn.2d at 677. The officer then arrested the defendant and searched the fanny pack. Id. The court upheld the search. Id. at 682. Although the fanny pack was not on the defendant's person at the exact moment of arrest, the court found that the defendant was in actual possession of the fanny pack "just prior to the arrest."[4] Id.

In Ellison, officers encountered the defendant with his backpack between his feet. 172 Wn. App. at 718. In the process of arresting the defendant, officers had him move to the ground and placed him in handcuffs. Id. The defendant argued that he

---

[4] In upholding the search, the court also found that the fanny pack was within the defendant's reach at the time of arrest, constituting constructive possession. Smith, 119 Wn.2d at 682. Byrd abrogates Smith's holding that constructive possession would be sufficient. 178 Wn.2d at 623.

was thus not in control of the bag at the time of arrest. Id. at 717. The court disagreed, suggesting that, even if the defendant was separated from his bag prior to his arrest, he still had control of the bag immediately prior. Id. at 718, n.4.

In both of these cases, the defendant was separated from his bag while the officer restrained him for the specific purpose of arresting him. See Smith, 119 Wn.2d at 677; Ellison, 172 Wn. App. at 718. The period of time that passed between possession and arrest was very brief. See Smith, 119 Wn.2d at 677; Ellison, 172 Wn. App. at 718.

By contrast, Officer Olson separated Brock from his bag during an investigative stop, did not intend to arrest Brock at that time, and explicitly told Brock he was not under arrest. The bag remained in the patrol vehicle unsearched for nearly 10 minutes. When Officer Olson's investigation provided him new information, he arrested Brock, but he did not handcuff Brock and stated Brock was not necessarily going to jail. Then, Officer Olson returned to the bag in his front seat to search it.

Brock's backpack was neither on his person nor within his area of control at the time of his arrest. While Officer Olson had probable cause to arrest Brock when he seized the backpack, it is the arrest itself—not probable cause—that constitutes the necessary authority of law to search under article I, section 7. State v. O'Neill, 148 Wn.2d 564, 585-86, 62 P.3d 489 (2003). Therefore, to find that this was a valid search incident to arrest, we must conclude that, for the purposes of what is in an arrestee's possession, "immediately prior to arrest" includes either the time between a valid Terry stop and the actual resulting arrest or the time between seizure of the backpack during

the <u>Terry</u> stop and the resulting arrest. To date, the language in the Washington Supreme Court's opinions has not gone this far. We decline to do so here.

We conclude that Brock did not have actual and exclusive possession of his backpack at or immediately preceding the time of his arrest. This was not a valid search incident to arrest. The trial court erred in denying his motion to suppress.

We reverse and remand.

WE CONCUR:

State v. Brock, 67334-3-I

BECKER, J. (dissenting) — I dissent from the majority decision and would hold that the warrantless search of the backpack was justified as a search of the arrestee's person incident to arrest.

Both parties cite the holding of State v. Byrd, 178 Wn.2d 611, 310 P.3d 793 (2013):

> We caution that the proper scope of the time of arrest rule is narrow, in keeping with this "jealously guarded" exception to the warrant requirement. It does not extend to all articles in an arrestee's constructive possession, but only those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest.

Byrd, 178 Wn.2d at 623 (citation omitted).

The backpack was in Brock's actual and exclusive possession shortly before the officer placed Brock under arrest for providing false information. I do not see any significance in the fact that Brock was separated from his backpack for about 10 minutes while the officer conducted an investigative stop. It is true that only a lawful custodial arrest provides authority to search incident to arrest under article I, section 7. State v. O'Neill, 148 Wn.2d 564, 585, 62 P.3d 489 (2003). The rule of O'Neill was not violated here, where the officer did not begin searching the backpack until he had placed Brock under arrest.

As set forth in Byrd, the scope of a lawful warrantless search of personal articles as part of a search incident to arrest has three components: (1) the articles must be "personal," (2) they must be "in the arrestee's actual and exclusive possession," and (3) the possession must be "at or immediately

preceding the time of arrest." Byrd, 178 Wn.2d at 623. If loosely interpreted, any one of these components has the potential to escape from historical limits and start down the road toward another progressive distortion of the type decried by Justice Frankfurter in his dissent in United States v. Rabinowitz, 339 U.S. 56, 72, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting), overruled in part by Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). See generally People v. Cregan, 2014 IL 113600, ¶ 98, 118; 10 N.E.3d 1196 (Burke, J., dissenting and expressing concern that the test articulated by the Cregan majority will permit a return to full vehicle searches incident to arrest by conceiving of a vehicle as a container immediately associated with an arrestee's person).

Searching a backpack does go beyond the facts of United States v. Robinson, the Fourth Amendment source of the Byrd holding. United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). In Robinson, the crumpled cigarette package containing heroin was found in a shirt pocket during a routine collar-to-socks search of the arrestee's clothing. Robinson, 414 U.S. at 221 & n.2. Still, many other courts have seen purses and fanny packs and shoulder bags as sufficiently pocket-like to be regarded as "in a fair sense a projection" of the arrestee's person. Rabinowitz, 339 U.S. at 78 (Frankfurter, J., dissenting). So far, cases following Robinson have projected the person only as far out as backpacks and briefcases and luggage the arrestee was carrying or pushing.

I do not perceive the facts of this case as giving cause for alarm that searches of the person incident to arrest will become open-ended as to time. The encounter occurred in a lonely spot in the middle of the night. Officer Olson might have arrested Brock immediately for trespassing. Had he done so, the majority would have recognized the subsequent search of the backpack as valid under Byrd's time of arrest rule. To hold that the search became invalid because the officer decided to investigate before making an arrest would create an undesirable incentive for hasty arrests. The officer was entitled to put the backpack out of reach for his own safety while he decided whether or not to make an arrest. The officer's way of dealing with the situation was thoroughly professional. I would affirm.

Becker, J.