IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77513-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| HEATHER ANNE ALEXANDER, | ) | PUBLISHED OPINION |
| Appellant. | ) | FILED: October 7, 2019 |

SMITH, J. — Heather Anne Alexander appeals her conviction for possession of a controlled substance. She argues that the trial court erred by not suppressing evidence found during a warrantless search of a backpack that was sitting behind her at the time of her arrest. Because the State failed to establish that Alexander had actual and exclusive possession of the backpack at or immediately preceding her arrest, we agree and reverse.

## FACTS

On July 15, 2017, Officer Troy Moss of the Everett Police Department responded to a trespass report at 901 West Casino Road in Everett. There, he observed a man and a woman, later identified as Delane Slater and Heather Alexander, sitting in an undeveloped field marked with "no trespass" signs. Officer Moss identified himself as law enforcement at some distance and observed Slater and Alexander manipulating some unknown items on the ground. Officer Moss approached Slater and Alexander, who remained seated by a log approximately three or four feet apart from each other.

Officer Moss informed Slater and Alexander that they were trespassing and obtained their identification. When Officer Moss conducted a records check on Alexander, he learned that she had an active Department of Corrections (DOC) warrant. A records check on Slater yielded no results.

While interacting with Alexander, Officer Moss observed a pink backpack sitting directly behind Alexander. The backpack was close enough to Alexander that it appeared to be touching her back. When Officer Moss asked Alexander whether the backpack belonged to her, she indicated that it did.

Officer Moss confirmed the DOC warrant and placed Alexander under arrest. At this point, Officer Moss did not believe that he had probable cause for any other offense. Because Alexander was being arrested, Slater offered to take Alexander's backpack with him. Alexander indicated to Officer Moss that it was her desire for Slater to take the backpack. Officer Moss informed Slater that Alexander's personal property would be searched incident to arrest and that it would remain with her at that time. He asked Slater to leave the scene and indicated that "Slater did not do anything to cause [Officer Moss] safety concern." Slater left without incident.

Officer Moss took Alexander into custody and walked Alexander and her backpack to his patrol vehicle. Alexander was cooperative throughout this course of action. Officer Moss seated Alexander in his patrol vehicle and placed her backpack on top of the trunk. He then searched the backpack and located items containing what he believed to be a controlled substance. Officer Moss informed Alexander that he was additionally arresting her for possession of a

controlled substance and advised her of her Miranda[1] rights.

The State charged Alexander with possession of a controlled substance, committed while on community custody. Prior to trial, Alexander moved to suppress the evidence found during Officer Moss's warrantless search of her backpack, arguing that the search did not fall within any valid exception to the warrant requirement. The trial court denied Alexander's motion and entered findings of fact and conclusions of law. A jury later found Alexander guilty as charged. Alexander appeals.

## ANALYSIS

Alexander argues that the warrantless search of her backpack was not a valid search incident to arrest, and thus the trial court erred by not suppressing the fruits of that search. Because the search was not a valid search of Alexander's person incident to arrest and the State does not argue that any other warrant exception applies, we agree.

### Standard of Review

When reviewing the denial of a suppression motion, this court ordinarily "determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). But here, Alexander does not challenge any of the trial court's findings of fact. Accordingly, they are verities on appeal, and the sole issue before this court is whether the trial court's findings

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

support its conclusions of law. State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003); State v. Carneh, 153 Wn.2d 274, 281, 103 P.3d 743 (2004). We review this issue de novo. Carneh, 153 Wn.2d at 281.

*Discussion*

The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV. The Washington State Constitution, whose privacy protections are more extensive than those provided under the Fourth Amendment, further narrows the State's authority to search. State v. VanNess, 186 Wn. App. 148, 155, 344 P.3d 713 (2015); State v. Valdez, 167 Wn.2d 761, 771-72, 224 P.3d 751 (2009). Accordingly, when presented with arguments under both the state and federal constitutions, we first examine the state argument. VanNess, 186 Wn. App. at 155. If a search is invalid under the Washington State Constitution, any inquiry into its validity ends there. State v. Parker, 139 Wn.2d 486, 492-93, 987 P.2d 73 (1999).

Under our state constitution, "a warrantless search is per se unreasonable unless the State proves that one of the few 'carefully drawn and jealously guarded exceptions' applies." State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting State v. Bravo Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)). The State's burden of proof in this context is a "heavy burden." Parker, 139 Wn.2d at 496.

Here, the warrant exception at issue is the exception for searches incident to arrest. There are two types of searches incident to arrest: "(1) a search of the

arrestee's person (including those personal effects immediately associated with his or her person—such as purses, backpacks, or even luggage) and (2) a search of the area within the arrestee's immediate control." State v. Brock, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015). A search of the area within the arrestee's immediate control, often referred to as a "grab area" search, "requires justification grounded in either officer safety or evidence preservation—there must be some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence." Brock, 184 Wn.2d at 154. By contrast, a search of the arrestee's *person* requires no additional justification beyond the validity of the arrest. Byrd, 178 Wn.2d at 617-18. Here, Alexander does not dispute the validity of the arrest. Meanwhile, the State does not argue that the search of Alexander's backpack was a valid grab area search. Accordingly, the only issue before us is whether the search of the backpack was a valid search of Alexander's *person* incident to arrest. For the reasons discussed below, we conclude that it was not.

In Byrd, our Supreme Court explained that whether an item is part of the arrestee's person is determined by applying the time-of-arrest rule, which turns on whether the arrestee had "actual and exclusive possession at or immediately preceding the time of arrest.'" Byrd, 178 Wn.2d at 621-23. In Byrd, Lisa Byrd was sitting in the front passenger seat of a car that was stopped after an officer determined that the car bore stolen license plates. Byrd, 178 Wn.2d at 615. The officer arrested Byrd for possession of stolen property. Byrd, 178 Wn.2d at 615. At the time of Byrd's arrest, she had a purse in her lap. Byrd, 178 Wn.2d at 615.

Before removing Byrd from the car, the officer seized the purse and set it on the ground nearby. Byrd, 178 Wn.2d at 615. After securing Byrd in the patrol car, the officer searched Byrd's purse, finding methamphetamine in a sunglasses case therein. Byrd, 178 Wn.2d at 615.

The trial court concluded at a later suppression hearing that the warrantless search of Byrd's purse was unlawful because Byrd was secured and unable to access the purse when it was searched. Therefore, there was no exigency present to search the purse out of concern for officer safety or evidence preservation. Byrd, 178 Wn.2d at 615. Division Three of this court affirmed. Byrd, 178 Wn.2d at 616.

Our Supreme Court reversed, observing that the lower courts erred by evaluating the search as a grab area search rather than as a search of Byrd's *person*. Byrd, 178 Wn.2d at 620. The court reasoned that "Byrd's purse was unquestionably an article 'immediately associated' with her person" and observed that "[t]he purse left Byrd's hands only after her arrest, when [the officer] momentarily set it aside." Byrd, 178 Wn.2d at 623-24. The court thus concluded under the time-of-arrest rule that the search of Byrd's purse was valid under both the state and federal constitutions. Byrd, 178 Wn.2d at 625. But, the court cautioned, "the time of arrest rule is narrow, in keeping with this 'jealously guarded' exception to the warrant requirement. It does not extend to all articles in an arrestee's constructive possession, *but only those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest.*" Byrd, 178 Wn.2d at 623 (emphasis added) (quoting Bravo Ortega, 177

6

Wn.2d at 122).

Fewer than six months after deciding <u>Byrd</u>, our Supreme Court again applied the time-of-arrest rule in <u>State v. MacDicken</u>, 179 Wn.2d 936, 319 P.3d 31 (2014). In <u>MacDicken</u>, officers stopped Abraham MacDicken, a robbery suspect, as he was leaving a hotel. 179 Wn.2d at 938-39. When MacDicken was stopped, he was carrying a laptop bag and pushing a rolling duffle bag. <u>MacDicken</u>, 179 Wn.2d at 939. Officers arrested MacDicken, and while he was standing next to a patrol car, handcuffed and speaking with an officer, another officer moved the bags a car's length away and searched them. <u>MacDicken</u>, 179 Wn.2d at 939. MacDicken later moved to suppress the evidence found during the warrantless search of the bags. <u>MacDicken</u>, 179 Wn.2d at 939. The trial court upheld the search as a valid search incident to arrest. <u>MacDicken</u>, 179 Wn.2d at 939. On appeal, we affirmed, analyzing the search as a grab area search and not as a search of MacDicken's person. <u>MacDicken</u>, 179 Wn.2d at 939-40; <u>see also</u> <u>State v. MacDicken</u>, 171 Wn. App. 169, 171, 176, 286 P.3d 413 (2012), <u>aff'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 179 Wn.2d 936, 319 P.3d 31 (2014). Our Supreme Court also affirmed, but on different grounds. <u>MacDicken</u>, 179 Wn.2d at 943. Specifically, the court applied the time-of-arrest rule and concluded that the search of MacDicken's bags was a valid search of his *person* because the bags were "in MacDicken's actual and exclusive possession at the time of his arrest." <u>MacDicken</u>, 179 Wn.2d at 942.

Our Supreme Court again analyzed the scope of the time-of-arrest rule in <u>Brock</u>. 184 Wn.2d at 155-56. In <u>Brock</u>, an officer was patrolling Golden Gardens

Park after hours when he noticed that the men's restroom door was open and the lights were on. 184 Wn.2d at 151. The officer could see a person's legs inside a bathroom stall. Brock, 184 Wn.2d at 151. The officer waited about 10 minutes before Antoine Brock emerged carrying a backpack. Brock, 184 Wn.2d at 151. The officer identified himself, had Brock remove the backpack, and performed a Terry[2] stop and frisk. Brock, 184 Wn.2d at 151. For safety reasons, the officer carried Brock's backpack to his vehicle and placed it on the passenger seat. Brock, 184 Wn.2d at 152.

After the officer determined that Brock had falsely identified himself as "Dorien Halley," the officer arrested Brock for providing false information. Brock, 184 Wn.2d at 151-52. Because Brock had been cooperative, the officer did not use handcuffs. Instead, he instructed Brock to remain near the curb while the officer returned to his vehicle to search the backpack for identification. Brock, 184 Wn.2d at 152. In the backpack, the officer found a wallet containing what appeared to be marijuana and methamphetamine. Brock, 184 Wn.2d at 152. The officer also found a DOC inmate identification card displaying Brock's photograph and identifying him as Antoine L. Brock. Brock, 184 Wn.2d at 152. The officer walked back over to Brock, handcuffed him, and put him in the back of his patrol vehicle. Brock, 184 Wn.2d at 152.

The officer then ran Brock's actual name through the state database and discovered that Brock had a felony arrest warrant. Brock, 184 Wn.2d at 152. After the Washington State Patrol confirmed the warrant, the officer "had no

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

choice" but to take Brock to jail. Brock, 184 Wn.2d at 152. Before doing so, the officer emptied the contents of the backpack, discovering numerous checks, credit cards, mail, and more baggies of suspected narcotics. Brock, 184 Wn.2d at 153.

Brock moved to suppress the evidence discovered during the search of his backpack. Brock, 184 Wn.2d at 153. The trial court denied Brock's motion, concluding that the search was a valid search incident to arrest. Brock, 184 Wn.2d at 153. Brock appealed, and the State argued that the search of the backpack was a valid search of Brock's person incident to arrest. Brock, 184 Wn.2d at 153. We disagreed, reasoning that Brock did not have actual, exclusive possession of the backpack "'immediately preceding'" the arrest. Brock, 184 Wn.2d at 153 (quoting State v. Brock, 182 Wn. App. 680, 689, 330 P.3d 236 (2014), rev'd, 184 Wn.2d 148, 355 P.3d 1118 (2015)). Specifically, we observed that the officer separated Brock from his backpack during the initial Terry stop and secured the backpack in his patrol vehicle. Brock, 182 Wn. App. at 689. And because the officer did not arrest Brock for several minutes thereafter, Brock did not have actual possession of the backpack at the time of or immediately preceding his arrest. Brock, 182 Wn. App. at 689.

Our Supreme Court reversed, explaining that

> [u]nder these circumstances, the lapse of time had little practical effect on Brock's relationship to his backpack. *Brock wore the backpack at the very moment he was stopped by Officer Olson.* The arrest process began the moment Officer Olson told Brock that although he was not under arrest, he was also not free to leave. *The officer himself removed the backpack from Brock as a part of his investigation.* And, having no other place to safely stow it, Brock would have to bring the backpack along with him into

9

custody. Once the arrest process had begun, the passage of time prior to the arrest did not render it any less a part of Brock's arrested person.

Brock, 184 Wn.2d at 159 (emphasis added). The court ultimately held that "when the officer removes the item from the arrestee's person during a lawful Terry stop and the Terry stop ripens into a lawful arrest, the passage of time does not negate the authority of law justifying the search incident to arrest." Brock, 184 Wn.2d at 159.

This case is readily distinguishable from Byrd, MacDicken, and Brock. Unlike in Byrd (where the defendant's purse was in her lap at the time of arrest), MacDicken (where the defendant was carrying a laptop bag and pushing a rolling duffle bag when officers saw him), and Brock (where the defendant was wearing his backpack when he was stopped), Alexander's backpack was merely sitting behind her at the time of her arrest. The State points to no evidence that Alexander was holding, wearing, or carrying the backpack at any time during her contact with Officer Moss, and Officer Moss himself testified that no one had reported seeing Alexander carrying the backpack at any earlier time. Indeed, the trial court made no finding that Alexander had actual and exclusive possession of her backpack at the time of or immediately preceding her arrest. The absence of such a finding is not surprising given that the backpack only "appeared" to be touching Alexander, and Slater was seated just a few feet away. Put another way, the trial court's findings establish, *at most*, that Alexander could immediately have reduced the backpack to her actual possession, i.e., that Alexander had dominion and control—and thus *constructive* possession—over the backpack.

10

See State v. Staley, 123 Wn.2d 794, 798, 872 P.2d 502 (1994) ("'Actual possession means that the goods are in the personal custody of the person charged with possession; whereas, constructive possession means that the goods are not in actual, physical possession, but that the person charged with possession has dominion and control over the goods.'") (quoting State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)); State v. Jones, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002) ("Dominion and control means that the object may be reduced to actual possession immediately."). But *actual and exclusive possession*, not merely constructive possession, is required under the time-of-arrest rule. See Byrd, 178 Wn.2d at 623 ("Extending [the arrestee's person] to articles within the arrestee's reach but not *actually in his possession* exceeds the rule's rationale."). And in the absence of a finding that Alexander had actual and exclusive possession of her backpack at the time of or immediately preceding her arrest, we must indulge the presumption that the State, which bore the "heavy burden" of proof on this issue, failed to sustain its burden. Parker, 139 Wn.2d at 496; State v. Armenta, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997). Indeed, to hold otherwise under these facts would erode the distinction between the arrestee's person and the arrestee's grab area. Cf. United States v. Knapp, 917 F.3d 1161, 1167 (10th Cir. 2019) (rejecting time-of-arrest rule and observing that although officers would have "clear guidance from a rule allowing them to search any container that an arrestee was or may have been touching around the time of

11

arrest[,] . . . such a rule risks expanding Robinson's[3] limited exception to grant unqualified authority to search an arrestee's grab area").

Furthermore, as our Supreme Court has explained, the scope of a warrant exception "must track its underlying justification." Brock, 184 Wn.2d at 158. To this end, the justification for warrantless searches of an arrestee's *person* (which require no justification beyond the validity of the arrest)—as distinct from grab area searches (which require "some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence")—is that "there are presumptive safety and evidence preservation concerns associated with police taking custody of those personal items *immediately associated* with the arrestee, which will *necessarily* travel with the arrestee to jail." Brock, 184 Wn.2d at 155 (emphasis added). Here, as discussed, the State failed to establish that Alexander's backpack was in her actual and exclusive possession at or immediately preceding the time of her arrest. Furthermore, Slater, about whom Officer Moss expressed no safety concerns, offered to take the backpack, and Alexander desired that Slater take it. Under these circumstances, Alexander's backpack was not an item immediately associated with her person that would *necessarily* travel to jail with her. Rather, the only reason the backpack traveled to jail with Alexander was because Officer Moss decided that it would. But the scope of the arrestee's person is determined by what must *necessarily* travel with an arrestee to jail, not what an officer *decides* to take to jail.

---

[3] United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973).

In short, the State failed to satisfy its "heavy burden" to demonstrate that the search of Alexander's backpack fell within the warrant exception for searches of an arrestee's person incident to arrest. Parker, 139 Wn.2d at 496. And because the State does not dispute that the evidence found in the backpack was the fruit of that search, the trial court erred by failing to suppress that evidence. See State v. Mayfield, 192 Wn.2d 871, 888-89, 434 P.3d 58 (2019) (exclusionary rule applies to the "fruit of the poisonous tree").

The State argues that this case is analogous to United States v. Tavolacci, 283 U.S. App. D.C. 1, 895 F.2d 1423 (1990), which was cited with approval in Byrd. See Byrd, 178 Wn.2d at 621. But just as in Byrd, MacDicken, and Brock, the arrestee in Tavolacci was carrying his suitcase during his interaction with law enforcement. United States v. Tavolacci, 704 F. Supp. 246, 253 (D.D.C. 1988), aff'd, 895 F.2d 1423; see also Tavolacci, 895 F.2d 1423, 1428-29 (agreeing with district court's analysis and observing that "defendant had control of the suitcase until moments before the search"). Therefore, the State's reliance on Tavolacci, 895 F.2d 1423, which is not binding in any event, is misplaced.

As a final matter, the trial court's stated justifications for denying Alexander's motion to suppress are unsupported by the law. Specifically, despite not making any finding that Alexander actually and exclusively possessed the backpack at or immediately preceding her arrest, the trial court nonetheless concluded that the warrantless search of Alexander's backpack was justified because (1) Alexander was close to the backpack and stated it belonged to her, (2) Officer Moss was not obligated by law to give the backpack to Slater, and (3)

it was reasonable for Officer Moss not to give the backpack to Slater. In short, the trial court expanded the arrestee's person to include any item in proximity to and owned by the arrestee if it is reasonable for the arresting officer to take the item to jail. But as discussed, the arrestee's person is limited to those items that are within the arrestee's actual and exclusive possession at or immediately preceding the time of arrest, and the State cites no authority for the proposition that proximity and ownership alone constitute actual and exclusive possession. The trial court's attempt to expand a "narrow" exception to the warrant requirement—instead of jealously guarding it—was error. See Byrd, 178 Wn.2d at 623 ("We caution that the proper scope of the time of arrest rule is narrow, in keeping with this 'jealously guarded' exception to the warrant requirement.") (quoting Bravo Ortega, 177 Wn.2d at 122).

We reverse.

Smith, J.

WE CONCUR:

Andrus, J.

Appelwick, C.J.

14