

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34701-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEONARD F. DAVISON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Leonard Davison appeals from his convictions for possession of a controlled substance (methamphetamine) and possession of a switchblade knife, challenging both the trial court's ruling on his motion to suppress and the sufficiency of the evidence to support the jury's verdicts. We affirm.

FACTS

Mr. Davison was riding in the front passenger seat of a Honda automobile when police pulled the vehicle over due to the fact that the vehicle owner's license had been suspended. Sheriff's deputies approached the car; one deputy spoke to the driver while another approached the passenger side. The driver presented a tribal identification card indicating that he was Donny Carson to Deputy Amber Dawson. The registered owner was Kyle Phillips. Carson also advised the deputy that he had no driver's license.

Meanwhile, Deputy Nathan Bohanek approached on the passenger side. About the same time the driver admitted he did not have a license, Bohanek noted that the ignition and steering column appeared to be torn apart; no key was visible. Bohanek returned to the patrol car to attempt to verify the driver's identity. Dispatch advised that Carson had an outstanding warrant. Bohanek then returned to the Honda and Dawson arrested Carson on the warrant.

Dispatch also reported that Kyle Phillips was an inmate at the Spokane County Jail. Bohanek returned to the Honda to identify[1] and speak with Davison and the rear seat passenger, Ms. Corrina Hendrickx. She was Davison's niece and Phillips' girlfriend. Both passengers also had outstanding arrest warrants and were taken into custody for that reason. When Mr. Davison was removed from the car, a digital camera and a small pouch were found on the seat where he had been sitting. The pouch was opened at the jail and the methamphetamine and switchblade were discovered inside.

Mr. Davison was charged with possession of a controlled substance and possession of a dangerous weapon. He filed a motion to suppress, arguing that the stop of the vehicle was invalid. The court disagreed and entered findings pursuant to CrR 3.6, largely deciding that cause existed to investigate due to the punched ignition. The matter proceeded to bench trial before a different judge. There Mr. Davison denied sitting on

---

[1] Mr. Davison did not give his correct name to the deputy. Ms. Hendrickx later identified her uncle to the deputy.

the items. He testified that he weighed 315 pounds and would have crushed the items if he had sat on them. They did not belong to him. He believed it was possible that they might have been behind him when he was sitting on the seat.

Defense counsel argued that her client did not possess the pouch[2] and that even if he sat beside it, he at most unwittingly possessed it. The trial court disagreed and found that Mr. Davison possessed the pouch, and the items therein, by either sitting on or in front of them. Clerk's Papers (CP) at 137.

After sentence was imposed, Mr. Davison promptly appealed to this court. A panel considered the matter without hearing argument.

ANALYSIS

Mr. Davison challenges both the outcome of the CrR 3.6 hearing and of the bench trial. We address first the suppression issue before jointly considering the sufficiency of the evidence argument.

*CrR 3.6 Hearing*

Mr. Davison argues that the court erred in its suppression ruling, contending that the traffic stop should have ended once the driver was identified to be someone other than the registered owner. Ample suspicion existed to continue the investigation.

---

[2] Defense counsel identified the item as a toiletry kit during argument.

3

When reviewing a denial of a CrR 3.6 motion to suppress, this court considers whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. *State v. Griffith*, 129 Wn. App. 482, 487, 120 P.3d 610 (2005). We review de novo the trial court's conclusions of law. *State v. Carneh*, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

RCW 46.20.349 provides that an officer may stop a vehicle when the registered owner's driver's license is known to be suspended. That statute was the basis for the traffic stop in this case. Mr. Davison contends that the traffic stop should have ended once the driver identified himself as someone other than the vehicle's owner. His argument has its genesis in *State v. Penfield*, 106 Wn. App. 157, 22 P.3d 293 (2001). For several reasons, this contention fails.

*Penfield* involved a traffic stop initiated under RCW 46.20.349 when an officer saw a vehicle being driven that was registered to a suspended driver, a woman. *Id*. at 159. However, as the officer approached the stopped vehicle, he saw that the driver was a man. Nonetheless, he obtained the license information from the driver, checked with dispatch, and found that the driver's license also was suspended. A search incident to an arrest for driving while license suspended revealed methamphetamine. *Id*. This court ruled that the traffic stop should have ended upon the officer's recognition that the registered owner was not driving. *Id*. at 161-162. The subsequent seizure of Mr.

4

Penfield by asking for his driver's license violated the Fourth Amendment. *Id*. at 162-163.

This court revisited *Penfield* and RCW 46.20.349 a few years later in *State v. Phillips*, 126 Wn. App. 584, 109 P.3d 470 (2005). There the trial court had interpreted *Penfield* as requiring officers to determine that, based on a description or other information, the driver might be the registered owner before seeking the driver's license. *Id*. at 586. On review, this court reversed the trial court in an opinion authored by the same judge who authored *Penfield*. Describing *Penfield* as "an exception," the court determined that an officer stopping a vehicle under this statute may investigate the identity of the driver except in the case where "it is manifestly clear that the driver of the vehicle is *not* the registered owner." *Id*. at 588 (emphasis in original).

Recognizing these cases, Mr. Davison argues that it was fine for the deputy to ask Mr. Carson for his identification, but contends that the investigation had to end when Carson established that he was not the registered owner. By this point, however, the investigation had turned up evidence of other offenses that justified further inquiry.

First, Carson failed to present a valid driver's license upon request, thus, potentially committing either the misdemeanor of driving without a valid license or the infraction of driving without having the license present. RCW 46.20.005, .015. In either instance, the officer was free to further investigate Carson's license status.

Second, and the basis relied on by the court at the suppression hearing, was the evidence observed by Deputy Bohanek that the car was being operated without a key and with a damaged steering column and ignition. CP at 124. These facts strongly suggested that the vehicle may have been stolen and, at a minimum, justified further investigation.

Mr. Davison argues that reliance on these facts to investigate the vehicle's status was improper since the record does not expressly state that Deputy Bohanek conveyed his observations to Deputy Dawson. This argument fails for two reasons. First, under the fellow officer rule, the information did not need to be shared between the deputies. Instead, it is the collective knowledge of the police team that determines the existence of probable cause. *State v. Ortega*, 177 Wn.2d 116, 126, 297 P.3d 57 (2013). Deputy Bohanek's observations alone justified a continued investigation concerning the use of the car. Second, it was Deputy Bohanek, not Deputy Dawson, who ultimately seized Mr. Davison by seeking his identification while Dawson was off dealing with Carson.[3] Even in the absence of the fellow officer rule, Deputy Bohanek had a basis for continuing the investigation of the apparently stolen car.

Of course, by the time he actually was arrested, Mr. Davison had lied about his identity to the deputies and was discovered to have an outstanding arrest warrant from federal authorities. When he was removed from the car, there were multiple valid

---

[3] Mr. Davison never attempted to leave the car prior to his arrest.

reasons for doing so. The items found on his seat were subsequently inventoried at the jail and resulted in the filing of state charges.

*Penfield* did not require the deputies to end their investigation upon discovering that Mr. Carson was not Mr. Phillips. As in *Phillips*, the officers had discovered other legitimate concerns that needed answering. The continued investigation was proper.

The trial court correctly denied the motion to suppress.

*Sufficiency of the Evidence*

Mr. Davison also argues that the evidence that he possessed the pouch and the items therein was insufficient. The trial judge was entitled to conclude otherwise.

Long settled standards govern our review of this contention. "Following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-106, 330 P.3d 182 (2014) (*citing State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id*. at 106. In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

7

This approach is the specific application of the evidentiary sufficiency standard dictated by the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 317-318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Jackson* stated the test for evidentiary sufficiency under the federal constitution to be "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Washington promptly adopted this standard in *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (plurality opinion); *Id*. at 235 (Utter, C.J., concurring). *Accord State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

Under *Jackson*, the test is *could* the trier of fact find the element(s) proven. Whether the trial judge *should* have done so is not our concern. For that reason, the argument presented fails. The trial court expressly found that Mr. Davison possessed both items. Mr. Davison argues that the evidence in the record merely shows that he was in proximity to the items and did not possess them.

At its heart, this was a factual call for the trier-of-fact. Containers such as purses or toilet kits are not kept inside one's clothing; instead, while in a vehicle such items usually sit in proximity to their owner. The items were found on the same seat as Mr. Davison, who denied both that he owned them and that they had shared his seat. In contrast, the court was free to credit the evidence from the deputy that they were found in his seat with him. It is a natural conclusion that the items were his since he was the one

8

exercising control over them when they shared his location. If the items had belonged to someone else, Mr. Davison likely would have put them on the floor or in the back seat rather than sit on or with the items.

The trial court was free to believe the competing story that the items were present without Mr. Davison's knowledge. Nonetheless, the trial judge did not draw that conclusion. She was free to conclude, as she did, that the items present on the seat with Mr. Davison were his property despite his testimony to the contrary. He, therefore, possessed the pouch with the two illicit items.

The convictions are affirmed.[4]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.                Siddoway, J.

---

[4] Mr. Davison also asks that we waive appellate costs. In light of the revisions to RAP 14.2, we leave that issue to our commissioner in the event that the State claims such costs.