# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57188-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| J.G., | |
| Appellant. | |

CHE, J. — JG appeals the juvenile court's guilty adjudication for resisting arrest.

In his initial appeal, JG argued that the court erred by denying his motion to suppress and that there is insufficient evidence to support his guilty adjudication for resisting arrest. In an opinion affirming the juvenile court's denial of JG's motion to suppress, we remanded for the juvenile court to enter findings and conclusions regarding JG's adjudications under JuCR 7.11(d).[1] We retained this appeal to address his sufficiency of the evidence claim upon the juvenile court taking further action.

JG argues that the court erred by adjudicating him guilty of resisting arrest because the underlying arrest was pretextual and thus unlawful. Specifically, JG argues that there is insufficient evidence to prove he resisted arrest because his arrest was unlawful, and the State did

---

[1] JuCR 7.11(d) states, "The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal."

not prove that the police officer properly exercised his discretion to effect a custodial arrest for JG's misdemeanor traffic offenses.

We hold that sufficient evidence supports the juvenile court's guilty adjudication for resisting arrest.

Accordingly, we affirm JG's conviction for resisting arrest.

FACTS

I. BACKGROUND

In January 2022, just before 1:00 a.m., Jefferson County Sheriff's Deputy Colby Schreier was on patrol. While on patrol, Deputy Schreier observed a slow-moving vehicle near a group of mailboxes. Based on his experience, mail theft typically happened late at night or early in the morning, so he believed criminal activity may have been afoot. Deputy Schreier pulled behind the vehicle but did not activate his emergency lights.

Deputy Schreier ran the vehicle's license plate number on his in-vehicle computer. The return information listed the vehicle as having been sold to JG more than 45 days earlier. The return also showed that title to the vehicle had not been transferred. The return included JG's name, date of birth, and an incident number indicating that JG had previously been warned that his driver's license was suspended. Deputy Schreier also learned that JG had a third degree suspended license.

As the vehicle was making a three-point turn, Deputy Schreier exited his patrol car and approached the vehicle on foot. Deputy Schreier did not engage his emergency lights.

2

Backlit by his patrol car's headlights, Deputy Schreier shined his flashlight on his uniform and announced his presence. Tapping on the driver's side window, Deputy Schreier repeatedly announced "sheriff's office" and instructed the driver to stop the vehicle. Rep. of Proc. (RP) at 25. During these interactions, Deputy Schreier spoke in an increasingly loud voice. Deputy Schreier thought that the driver was pretending not to see him as the driver gave the officer a "peripheral look" but never fully turned to look at him. RP at 26.

After giving one last announcement to stop the vehicle, Deputy Schreier "transitioned [his] flashlight to [his] right hand and struck the driver's window . . . causing it to shatter." RP at 30-31. The driver accelerated and the vehicle slid into a ditch. Deputy Schreier contacted the driver, who was yelling at him, and instructed the driver to step out of the vehicle, but the driver did not do so. Deputy Schreier told the driver that he believed the driver's license had been suspended, that he had failed to transfer title, and that he did not stop and talk to the officer. Deputy Schreier asked, "[Y]ou're [JG], correct[?]" and "[the driver] said yes." RP at 35. Deputy Schreier advised JG he was under arrest for driving while license suspended and failure to transfer title, and again told JG to step out of the vehicle. Deputy Schreier attempted to arrest JG, but JG said he would not do anything Deputy Schreier told him to do, including exiting the vehicle. Deputy Schreier grabbed JG's arm and JG pulled it away. At some point during this contact, Deputy Schreier asked JG why he was in that area at 1:00 a.m.

Sergeant Ryan Menday arrived after receiving Deputy Schreier's radio call for assistance. Sergeant Menday spoke with JG and told him to exit the vehicle several times before finally convincing JG to exit the vehicle and taking him into custody.

Deputy Schreier did not always stop and arrest an individual for driving with a suspended license. At times, he would mail citations to drivers but only to drivers who he could positively identify and confirm as those with suspended licenses. In those instances, Deputy Schreier would attempt to find or stop the known driver, but if they had left the area or if he had received a delayed return upon checking their status, he would consider writing a citation or forwarding the charges to the prosecutor without initiating a stop. Deputy Schreier did not mail JG a citation because he had not identified him until after he made contact.

Previously, in November 2021, law enforcement warned JG about his driver's license suspension and told him not to drive. During that contact, the officer also warned JG that the vehicle's title had not been transferred. The officer did not issue JG a citation in November 2021.

The State charged JG with one count of resisting arrest, one count of obstructing a law enforcement officer, one count of third degree driving while license suspended, and one count of failure to transfer title within 45 days after the date of delivery of a vehicle.

## II. PROCEDURAL HISTORY

JG moved under CrR 3.6 to suppress all of the evidence obtained as a result of his seizure.[2] The juvenile court denied the motion to suppress.

The court held an adjudicatory hearing. The witnesses testified consistently with the facts above. The court found JG guilty of one count of resisting arrest, one count of driving

---

[2] JG conceded that Deputy Schreier had "reasonable suspicion for a stop based on one or both [the] failure to transfer title after 45 days have passed, and/or driving with license suspended in the third degree." RP at 67.

while license suspended, and one count of failure to transfer title. It found JG not guilty of obstructing a law enforcement officer. The court did not enter findings of fact or conclusions of law.

In his initial appeal, JG argued that the court erred by denying his motion to suppress and that there is insufficient evidence to support his resisting arrest conviction. JG further argued that regardless of our decision on his sufficiency of the evidence claim, we must remand for entry of written findings and conclusions on his remaining counts.

In our opinion, we affirmed the juvenile court's denial of JG's motion to suppress but remanded for the court to enter findings and conclusions regarding JG's adjudications under JuCR 7.11(d). We retained this case to address JG's sufficiency of the evidence claim for resisting arrest.

Following supplemental proceedings, the juvenile court entered findings and conclusions adjudicating JG guilty beyond a reasonable doubt of resisting arrest and other charges consistent with its initial oral ruling. The court found that Deputy Schreier told JG he was under arrest for driving while license suspended and failure to transfer title, and that Deputy Schreier told JG to get out of the car multiple times, but JG failed or refused to do so. It concluded that

> [JG] intentionally attempted to prevent Deputy Schreier and Sergeant Menday from arresting him. Once Deputy Schreier confirmed that the driver of the car was [JG] he had probable cause to arrest him for both driving while license suspended and failure to transfer title within 45 days, and therefore, *the attempt to arrest and arrest were lawful*.

Suppl. CP at 143 (FF & CL) (emphasis added).

ANALYSIS

I. S<small>UFFICIENCY OF THE</small> E<small>VIDENCE</small>

JG argues that there is insufficient evidence to prove he resisted arrest because his arrest was pretextual and thus unlawful, and the State did not prove that Deputy Schreier properly exercised his discretion to effect a custodial arrest for JG's misdemeanor traffic offenses.  We disagree.

A.    *Legal Principles*

 "Sufficiency of the evidence is a question of constitutional magnitude that the defendant may raise for the first time on appeal."  *State v. Fleming*, 155 Wn. App. 489, 506, 228 P.3d 804 (2010).  When determining the sufficiency of evidence, we look at whether, after viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt.'"  *State v. Bertrand*, 3 Wn.3d 116, 139, 546 P.3d 1020 (2024) (quoting *State v. Hampton*, 143 Wn.2d 789, 792, 24 P.3d 1035 (2001)).

When reviewing a juvenile court adjudication, we must determine whether substantial evidence supports the court's findings of fact and whether the findings support the conclusions of law.  *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007).  Unchallenged findings of fact are verities on appeal.  *Id.*

We review a juvenile court's conclusions of law de novo.  *Id.*  A challenge to the sufficiency of evidence admits the truth of the State's evidence and all reasonable inferences drawn from the evidence.  *Id.*  We give deference to the trier of fact on issues of witness

6

credibility, conflicting testimony, and the persuasiveness of evidence. *State v. Martinez*, 123 Wn. App. 841, 845, 99 P.3d 418 (2004). When the State presents insufficient evidence, the remedy is dismissal of the charge with prejudice. *State v. Irby*, 187 Wn. App. 183, 204, 347 P.3d 1103 (2015).

Under RCW 9A.76.040, a person is guilty of resisting arrest if they intentionally prevent or attempt to prevent a police officer from lawfully arresting them. An officer has authority to arrest someone who has committed a misdemeanor or gross misdemeanor in the officer's presence. *State v. Ortega*, 177 Wn.2d 116, 124, 297 P.3d 57 (2013); *see also* RCW 10.31.100. A violation of RCW 46.20.342(1)(c), which defines the crime of driving while license suspended in the third degree, is a gross misdemeanor. RCW 46.20.342(1)(c). A violation of RCW 46.12.650(8), which defines the crime of failing or neglecting to apply for a transfer of vehicle ownership within 45 days after delivery of a vehicle, is a misdemeanor. RCW 46.12.650(8). When an officer arrests a person for any violation of the traffic laws or regulations, which is punishable as a misdemeanor or by imposing a fine, the arresting officer may serve upon the person a traffic citation and notice to appear in court. RCW 46.64.015.

Article I, section 7 of the Washington Constitution states, "No person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." A "person is seized for purposes of article I, section 7 if, based on the totality of the circumstances, an objective observer could conclude that the person was not free to leave, to refuse a request, or to otherwise terminate the encounter due to law enforcement's display of authority or use of physical force." *State v. Sum*, 199 Wn.2d 627, 631, 511 P.3d 92 (2022).

By definition, pretext is a false reason that is used to disguise a real motive. *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). An officer commits a pretextual stop when they stop a vehicle "to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code." *Id.* An officer may not use an arrest as a pretext to search for evidence. *State v. Ladson*, 138 Wn.2d 343, 353, 979 P.2d 833 (1999).

When determining whether a stop is pretextual, courts should consider the "totality of the circumstances," including the subjective intent of the officer and the objective reasonableness of the officer's behavior. *Id.* at 358-59. "Under *Ladson*, even patrol officers whose suspicions have been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop." *State v. Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000).

B.      *Officers Lawfully Arrested JG*

JG argues that because his arrest, not his stop, was pretextual and thus unlawful, the State did not prove an element of the crime—that the arrest was lawful.[3] Specifically, JG submits that a discretionary arrest, such as one for third degree driving while license suspended and failure to transfer title, violates article 1, section 7 if it is a pretext to investigate other potential crimes without probable cause. Under the facts of this case, we disagree.

As a preliminary matter, the State argues that under RAP 2.5(a), JG "has waived his challenge to the lawfulness of the arrest where such issue was not raised in the [juvenile] court."

---

[3] JG "does not seek to 'relitigate' the lawfulness of the initial traffic *stop*, on which this Court already issued a holding." Suppl. Br. of Appellant at 9 (emphasis added). The traffic stop and subsequent *arrest* are distinct issues. JG asks us to review the latter. Caselaw does not clearly recognize the existence of "pretextual arrests." JG appears to frame his arrest as a "pretextual seizure" in order to rely on cases addressing pretextual traffic *stops*.

Suppl. Reply Br. of Resp't at 5. We disagree because sufficiency of the evidence is a question of constitutional magnitude that JG may raise for the first time on appeal. *See Fleming*, 155 Wn. App. at 506. Therefore, we reach this issue on appeal.

JG asks this court to recognize the existence of "pretextual arrest[s]" and apply caselaw addressing pretextual traffic stops to his case. *See* Suppl. Br. of Appellant at 9. In support of his argument, JG primarily cites to *State v. Michaels*, 60 Wn.2d 638, 374 P.2d 989 (1962), and *Ladson*, 138 Wn.2d 343 (1999). As we discuss below, JG's reliance on these cases is misplaced. And even if we assume that the rules applying to pretextual traffic stops extend to arrests, JG's case is nonetheless distinguishable from cases like *Michaels* and *Ladson* where courts have found pretext.

In *Michaels*, officers were instructed to look for the vehicle that the defendant was driving. 60 Wn.2d at 640. They arrested the defendant for failing to signal a left turn and searched the vehicle for contraband property. *Id.* at 639. There, our Supreme Court found that the arrest was made "for the sole purpose of searching the automobile to ascertain whether it contained any contraband property. It was a mere pretext for the search and was therefore unlawful." *Id.* at 645. The court also noted that "[a]n arrest may not be used as a pretext to search for evidence." *Id.* at 644.

Unlike in *Michaels*, here, there was no search incident to arrest through which law enforcement discovered contraband. Furthermore, the evidence does not show that Deputy Schreier used the arrest as a pretext to search for evidence of criminal activity unrelated to JG's misdemeanor traffic offenses. In support of his argument, JG cites to the probable cause

statement, which was not evidence admitted at trial, and to Deputy Schreier's testimony that he and JG had a conversation about why [JG] was down there. Supp. Br. of Appellant at 17, 19, RP at 123. But we do not find JG's citations to be persuasive evidence that Deputy Schreier arrested JG on discretionary crimes to merely investigate his presence in the neighborhood. The evidence at the adjudicatory hearing showed that Deputy Schreier arrested JG to enforce the traffic code, which he had authority to do as JG committed both a misdemeanor and gross misdemeanor in his presence. *Ortega*, 177 Wn.2d at 124; *see also* RCW 10.31.100. Moreover, even if we agree that it was unlawful for Deputy Schreier to ask, post-arrest, why JG was in that area at 1:00 a.m., it is unclear whether, post-arrest, Deputy Schreier investigated any alleged suspicions about why JG was in the neighborhood. JG's arrest was lawful, even under *Michaels*. Thus, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that JG's arrest was lawful beyond a reasonable doubt.

JG's reliance on *Ladson* is also misplaced. In *Ladson*, officers followed a vehicle for several blocks, looking for a legal justification to stop the vehicle and investigate their suspicions that the occupants were involved in trafficking narcotics. 138 Wn.2d at 345-46. The officers eventually stopped the vehicle because it had expired license tabs and arrested the driver for driving while license suspended. *Id.* at 346. They conducted a full search of the vehicle and passenger, Ladson, whom they eventually arrested and charged with crimes. *Id.* at 346-47. The officers did not deny that their stop was pretextual. *Id.* at 346.

Unlike in *Ladson*, a pretextual stop case, here, we determined in our previous opinion that there was no pretextual stop. Even if we agree with JG that pretextual stop case law should

extend to arrests, there is no claim that there was an unlawful search or investigation that was unrelated to JG's driving, which might demonstrate that JG's arrest was a pretext to accomplish an impermissible ulterior motive.

Additionally, JG asserts that "the State did not prove Deputy Schreier exercised his discretion consistent with Article I, Section 7." Suppl. Br. of Appellant at 13. We disagree.

JG appears to contend that his arrest was unlawful because the State had to prove that Jefferson County sheriff's deputies "normally effected a custodial arrest for the administrative traffic offenses of third-degree DWLS or failure to transfer title" in order to meet its burden of proving a lawful arrest. *See* Suppl. Br. of Appellant at 17. JG provides no citations to authority in support of his contention. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."); *see also* RAP 10.3(a)(6).

Relatedly, JG contends that if Deputy Schreier would typically have issued a citation to a driver and let them leave the scene, then JG's arrest was pretextual. But Deputy Schreier did not testify that he normally would have issued a citation and allowed the driver to leave under the facts of JG's case. Rather, Deputy Schreier testified that he would mail a citation only to drivers who he could positively identify and confirm as those with a suspended license. Deputy Schreier would not issue a citation to drivers he could not positively identify. Here, Deputy Schreier did not mail JG a citation because he had not identified him until he made contact.

Thus, we hold that JG's arrest was lawful and that there was sufficient evidence to prove he resisted arrest.

## CONCLUSION

In an unpublished opinion, we hold that JG's arrest was lawful and that there was sufficient evidence to prove he resisted arrest.

Accordingly, we affirm JG's conviction for resisting arrest.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Cruser, C.J.